IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-00588-WYD-MJW


RUSSELL D. COOLEY,

Plaintiff,

v.

ARISTEDES W. ZAVARAS "EXECUTIVE DIRECTOR OF C.D.O.C.,"

Defendant.

---

**RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (Docket No. 34)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


        This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by District Judge Wiley Y. Daniel on May 7, 2008.  (Docket No. 18).

        The operative pleading is the Amended Complaint filed on April 28, 2008.

(Docket No. 14-2).  Plaintiff asserts the following in that pleading.  Plaintiff came to the

Colorado Department of Corrections ("CDOC") on October 20, 2006.  Deputy Tom

Johnston called ahead to CDOC headquarters to inform CDOC that plaintiff would be

entering the CDOC system and had a "hit" on him issued by the "Sureno gang."  The

"hit" was due to his stealing money, drugs, and guns from them along with testifying

against them in an attempted murder proceeding and helping the police by giving

statements in two murder cases which resulted in several men receiving life sentences

in the CDOC.  The Surenos have been making threats against plaintiff's life and

attempted to kill plaintiff about five times while he was still on the streets.

Once plaintiff was in the CDOC, at the Denver Reception & Diagnostic Center, he personally told Mental Health and his programmer Lt. Chavez and sent a "kite" to Intelligence with information about his "situation" and the facilities at which there were "problems" waiting for him.  Plaintiff then wrote a letter addressed to the Executive Director of CDOC informing him in detail what was going on and requesting that he be moved to an out-of-state facility or placed in administrative segregation as a safety precaution.  In that letter, plaintiff stated he was in fear for his life and believed the threats to be real, and he further indicated that if he was forced into a situation where he "would have no choice but to defend [himself] by making a homemade knife and possibliy [sic] useing [sic] it and having to kill another humun [sic] being that I intended on filing a lawsuit against his office, for deliberately or maliciously causing the condition."  (Docket No. 14-2 at 3-4).  Plaintiff then wrote to one of his attorneys to ask him to call a CDOC tips line and tell them what was going on with the threats.  He also had his other attorney call CDOC headquarters and talk to them about moving him to an out-of-state facility or placing him in protective custody.  "They told him they only move high profile sex offenders and cops to out of state placement and that I would have to go into general population and that something would have to happen to me befor [sic] they would do anything."  (Docket No. 14-2 at 4).

As soon as plaintiff arrived at Limon Correctional Facility, he informed Lt. Fox of Intelligence about the situation.  Plaintiff was placed on extended orientation while Fox investigated plaintiff's claims because there were about 20 Surenos from Greeley in the facility, and Fox did not know why they would send plaintiff there knowing his problems.

After Christmas, after talking with a Greeley police officer, Fox had plaintiff moved immediately.

Plaintiff was moved to Colorado Territorial Correctional Facility ("CTCF") where he spent a year and where on January 8, 2008, was jumped by Surenos about seven times. They threatened to stab plaintiff and another individual from Greeley. Plaintiff defended himself against the threat. Plaintiff again informed Major Mayfield (a security major at CTCF) of what was going on and requested she move plaintiff to a different prison and complete the paperwork to have him placed in administrative segregation because plaintiff believed he "would not make it any were eles [sic]." (Docket No. 14-2). She tried but could not keep plaintiff at that facility because of the amount of intelligence and threats. The Surenos sent a message to plaintiff

> saying that I forced them to do what they were doing and if I came back to G.P. then I needed to blade up meaning make a weapon and be ready to use it. Then an individual came into the facility that knew about me testifiying [sic] agasnt [sic] Surenos and a white boy I told a Sgt. about the situation getting ready to go down and they did nothing. I told them again they did nothing. So I made a weapon. A homemade knife for self defences [sic]. I feel that Aristedes W. Zavaras the executive Director of C.D.O.C. be cause [sic] he had the control to prevent everything from the time he recived [sic] my letter, calls from my lawyers and from Weld Co Deputy Tom Johnston. is respondible [sic] for violating my Eight Amendment right "failure to protect prisoners physical safty [sic]" . . . deliberately or maliciously causing the conditions and compermizing [sic] my mental health.

(Docket No. 14-2 at 5).

Based on the above, plaintiff raises one claim for relief, namely, "failure to protect prisones [sic] physical safty [sic] and mental health." (Docket No. 14-2 at 6). The only named defendant is Aristedes W. Zavaras, Executive Director of the CDOC. Plaintiff seeks the following relief:

The relief I am requesting is recovery of money damages for personal injuries, and mental health problems, result of physical abuse by another offender and mental abuse as a result of fearing my life for over 1 year. in the amount of two hundred and fifty thousand dollars pluse [sic] any permant [sic] mental health care, to be moved to ether [sic] an out of state prison or the federal prison system to serve my federal prison sentences with my state sentence running with it.

(Docket No. 14-2 at 8).

Now before the court for a report and recommendation is defendant's Motion to Dismiss (Docket No. 34) in which the defendant seeks dismissal of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds: (1) the Eleventh Amendment bars any official capacity claim against Zavaras, (2) the complaint fails to allege facts showing that Zavaras personally participated in any unconstitutional conduct, (3) the complaint fails to state an Eighth Amendment claim against Zavaras, (4) plaintiff does not have a right to be transferred to an out-of-state prison or federal prison, (5) Zavaras is entitled to qualified immunity in his individual capacity, and (6) the Prison Litigation Reform Act bars plaintiff's damages claim because there is no allegation that plaintiff suffered any physical injury due to Zavaras' alleged conduct. Defendant notes in his motion that it appears from the complaint that plaintiff's letter to the "executive Director" was written shortly after plaintiff entered C.D.O.C. custody in October 2006, which was before Zavaras became the Executive Director in January 2007. (Docket No. 34 at 5 n.2).

In response, plaintiff filed what he entitled "MOTION, REQUESTING To Deny Defendants [sic] Motion to Dismiss and to put civil action on Hold." (Docket No. 36). Along with the cover sheet that contained that caption, plaintiff submitted a letter to the court in which he states the following. He does not know how to defend himself against

the motion, understands very little of any of the papers he has received in this case, has unreasonable access to the law library, and even if he did have better access, he "wouldn't know where or what I was looking for." (Docket No. 36 at 2). He does not know whether he is suing the defendant in his individual or official capacity. "What I do know is that my rights are being violated in the department of corrections, I am not making ay of this up I (may) be unsure as to who is respondsible [sic] for these violations my court papers say that I was remanded to the custody of the executive director thus making him respondable [sic] for what happens to me." (Docket No. 36 at 2).

Moreover, plaintiff asks "**that this case be put on hold or dismissed with out prejudice** and give me the right to take it to a state court so that I can sue DOC altogether. I just don't know what I'm doing and don't want to mess up my only chance to have the wrongs righted. . . ." (Docket No. 36 at 3 and 36-2) (emphasis added). The court has construed this statement as a motion pursuant to Fed. R. Civ. P. 41(a)(1)(A), which provides: "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment . . . ." Fed. R. Civ. P. 41(a)(1)(A). In this case, there has been no answer filed by the defendant, nor has a motion for summary judgment been filed. It is thus recommended that this action be dismissed without prejudice pursuant to Rule 41(a)(1)(A).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that this action be dismissed without prejudice pursuant to Rule 41(a)(1)(A). It is thus further

**RECOMMENDED** that defendant's Motion to Dismiss (Docket No. 34) be denied as moot.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: October 2, 2008      s/ Michael J. Watanabe
      Denver, Colorado      Michael J. Watanabe
                                United States Magistrate Judge